UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　v.<br><br>MICHAEL THOMAS | Criminal No. 3:13cr4 (JBA)<br><br>November 18, 2013 |

**RULING ON THE GOVERNMENT'S MOTIONS IN LIMINE[1]**

On January 4, 2013, a federal grand jury returned an Indictment [Doc. # 1] charging Defendant Michael Thomas with one count of theft from an Indian tribal organization, in violation of 18 U.S.C. § 1163, and two counts of theft concerning an Indian tribal government receiving federal funds in violation of 18 U.S.C. § 666(a)(1)(A). These charges arise from a Government investigation into an alleged scheme by Mr. Thomas to use the American Express card issued to him by the Mashantucket Pequot Tribal Nation (the "MPTN" or the "Tribe") in his capacity as Chairman of the Tribal Council for personal expenditures. In an attempt to refute these charges, Defendant seeks to offer evidence at trial that other members of the Tribal Council used their American Express cards for personal use and then reimbursed the Tribe on a monthly basis; that he previously reimbursed the Tribe for personal expenditures on his official credit card; and that he intended to reimburse the Tribe for any outstanding personal charges on the card.

The Government has filed two motions *in limine* to (1) preclude evidence of Mr. Thomas's intent to reimburse the MPTN (*see* Gov't's First Mot. *in Limine* [Doc. # 29]); and (2) to preclude evidence that other members of the Tribal Council routinely used

---

[1] The Court issued an oral ruling on the Government's motions *in limine* during a telephonic status conference held on July 19, 2013. (*See* Minute Entry [Doc. # 47].) The following represents the written opinion that the Court stated would issue to confirm its oral ruling on the motions.

their tribal credit cards for personal expenses and then reimbursed the Tribe on a monthly basis (*see* Gov't's Second Mot. *in Limine* [Doc. # 30].)[2] The Government argues that because the intent to repay funds, and the fact that others engaged in similar conduct, is not a defense to embezzlement or willful or intentional misapplication, this evidence is irrelevant and should be excluded under Federal Rules of Evidence 401 and 403. Defendant counters that Defendant's intent to repay and his belief that the MPTN had a policy permitting reimbursement of personal charges is probative of whether his actions were willful and intentional within the meaning of the charged offenses, and also represents a defense to the crimes charged. For the following reasons, the Government's motions are granted.

I. **Discussion**

A. **Intent to Repay**

A review of the case law in this and other circuits makes clear that the intent to repay embezzled or misapplied funds is not recognized as a defense to charges of embezzlement or willful or intentional misapplication of funds under 18 U.S.C. §§ 666 and 1163. *See, e.g.*, *United States v. Young*, 955 F.2d 99, 104 (1st Cir. 1992) ("Regardless, an intent to return money or property is not a defense to a charge of embezzlement."); *United States v. Angelos*, 763 F.2d 859, 861 (7th Cir. 1985) ("In fact it is irrelevant, just as it is irrelevant to a charge of embezzlement that the embezzler intended to return the money he embezzled—or even that he did return it."); *United States v. Coin*, 753 F.2d 1510, 1511 (9th Cir. 1985) ("The intent to return property is not a defense to

---

[2] The Government also moved [Doc. # 30] to exclude evidence that Mr. Thomas's personal accountant was convicted in an unrelated wire fraud case. However, at the parties' July 15, 2013 status conference, defense counsel indicated that he did not intend to call Mr. Thomas's accountant as a witness or to offer evidence of his conviction, and thus the Court denies this portion of the Government's motion as moot.

embezzlement.  Such crimes are complete when the misapplication occurs."); *United States v. Scheper*, 520 F.2d 1355, 1358 (4th Cir. 1975) ("If an employee knowingly appropriates his employer's money to his own use, he may be found guilty of embezzlement even though at the time he intended to return it."). *Cf. United States v. Buckley*, 101 F.3d 685, 1996 WL 282140, at *2 (2d Cir. 1996) ("Although the defendants argue that it was improper for the district court to have instructed the jury that 'a good faith belief by a defendant that somehow or other she will be able to pay back the funds in the future is not a defense of good faith,' this charge merely restated the principle that an intent to return money or property is not a defense to the charge of embezzlement." (internal quotation marks and citations omitted)).  Thus, evidence of Defendant's intent to repay embezzled or willfully or intentionally misapplied funds offered as a good faith or other defense will be precluded at trial.  Furthermore, any evidence that Defendant did reimburse the Tribe for personal expenses improperly charged on his official credit card prior to the time period charged in the Indictment is impermissible propensity evidence and not otherwise relevant charged conduct, and therefore will be excluded.

  **B.**  **Evidence of the Conduct of Other Members of the Tribal Council**

The Government also argues that evidence that other members of the Tribal Council used their official American Express cards for personal use and then reimbursed the Tribe is irrelevant, relying primarily on *United States v. Oldbear*, 568 F.3d 814 (10th Cir. 2009).  In *Oldbear*, the defendant was convicted of embezzling tribal funds under 18 U.S.C. § 1163 when she used funds from the Emergency Assistance Program ("EAP") to repair one car and purchase another.  At trial, the defendant attempted to offer evidence that other tribal members had received money from the EAP to purchase or repair

vehicles.  In upholding the district court's decision to exclude such evidence, the Tenth Circuit reasoned that

> the witnesses' testimony would merely have established that the [EAP] was being managed in a "sloppy" or corrupt manner.  Such evidence could not prove whether the tribe approved Oldbear's expenditures, nor could it shed any light on her state of mind. . . .  Here, the district court aptly characterized Oldbear's proffer as an attempt to establish an "everybody-is-doing-it defense."  Essentially, the witnesses would have testified that they, like Oldbear, were allowed to use tribal funds to pay for personal transportation expense.  But only Oldbear's actions and state of mind were material to her guilt.  And the fact that others may have been the beneficiaries of improper conduct does nothing to excuse Oldbear.  The witnesses' testimony was a sideshow from which the jury could have gleaned little valuable information other than additional instances of sloppy or corrupt management of the [EAP].

*Id.* at 821.

Even if the Court were to find the Tenth Circuit's reasoning in *Oldbear* inapplicable to the circumstances of this case, the evidence the Government seeks to exclude would not be relevant to Mr. Thomas's state of mind because he has not proffered any evidence that he was aware that other members of the Tribal Council used their cards for personal expenditures and reimbursed the Tribe at a later date.  Without evidence of his personal knowledge of this practice, such actions could not have formed the basis for Mr. Thomas's claimed belief that the Tribe had a policy of permitting such use of the American Express cards, and that his personal use of his official tribal card was authorized or was the result of mistake or inadvertence.  Therefore, the Court grants the Government's motion to exclude evidence that other members of the Tribal Council charged personal expenses to their American Express cards to show Mr. Thomas's state of mind.

4

II.     **Conclusion**

For the foregoing reasons, the Government's First Motion [Doc. # 29] *in Limine* is GRANTED, in that evidence of Mr. Thomas's intent to repay cannot be offered as a defense to the charged offenses, and evidence of his reimbursement of the Tribe prior to the period charged in the Indictment is irrelevant.  The Government's Second Motion [Doc. # 30] *in Limine* is GRANTED, in that evidence that other members of the Tribal Council used their American Express cards for personal expenditures cannot be offered to show Mr. Thomas's state of mind regarding the Tribe's policy regarding personal use of these credit cards.

IT IS SO ORDERED.

   /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of November, 2013.